UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KEITH ALLEN, | ) |
|         Plaintiff, | ) |
| v. | )    No.: 18-cv-1345-JBM |
| SUSAN K. PRENTICE, at al., | ) |
|         Defendants. | ) |

**MERIT REVIEW- SECOND AMENDED COMPLAINT**

Plaintiff, proceeding *pro se*, files a second amended complaint under 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement and intentional infliction of emotional distress at the Pontiac Correctional Center ("Pontiac"). Plaintiff names Michael Melvin, Susan Prentice, Lieutenants Dalton, Evans and Corley and Sergeants Meister and Shoemaker. In addition, he names five John Doe employees of the Illinois Department of Corrections ("IDOC"). This matter is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the second amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff asserts that he was held under unconstitutional conditions of confinement for 11 months, from April 1, 2016 through February 2017. On April 1, 2016, Plaintiff was transferred

1

from the Stateville Correctional Center to Pontiac on a disciplinary transfer. When he arrived at Pontiac, he was placed in the North House segregation unit. Plaintiff explains that this unit houses inmates who are in protective custody, inmates who have "caused problems" elsewhere and inmates who are Seriously Mentally Ill ("SMI") and suicidal. Plaintiff claims that some of them throw feces and urine on other inmates and staff. He also claims that the North House is overcrowded with 52 cells on each gallery, with four galleries "stacked on top of each other." He does not particularly claim that there is overcrowding in the cells and appears to object to the configuration of the unit. He also alleges, on information and belief, that at times he was only cells away from inmates who had infectious diseases.

Plaintiff complains that correctional officers allow inmates to throw feces, to throw trash on the gallery, and to bang and kick their doors, without reprisal. He claims to have had feces thrown on him, leaving him in fear of catching a disease. Plaintiff claims that his cell on the North Cell House was filthy and had a feces-contaminated food slot. Plaintiff was so disgusted that he suffered stomach aches and was, at times, unable to eat.

Plaintiff claims that there were roaches, spiders, and mice in his cell and that he was bitten by bugs. He alleges that there had been mouse droppings in his cell and on his food. He also claims that his sink had a rusted-out faucet, with mold growing around it. He claims, without support, that the water in the sink is contaminated with radium and lead, causing him to experience severe stomach pains, cramps, joint pain, migraine headaches and constipation.

Plaintiff also complains that the vent in his cell was filthy and he could not access the air duct to clean it. He claims that the ventilation system blew dust, dirt, and mold into the cells. He claims that the air itself was contaminated with dust, vermin, dander, hair, lead, wool fibers, urine and feces fumes, mold, and mace. These conditions have caused him to sneeze and his

nose to run.  In addition, he chokes, coughs uncontrollably, has burning of his eyes and difficulty breathing and concentrating.

Plaintiff also complains about his bedding.  He claims that the mattress was torn, dirty and had an odor.  In addition, he went several months without a pillow.  He claims that these conditions caused him low back pain, difficulty sleeping and mental anguish.  Plaintiff also alleges that inmates frequently flooded the gallery with sewage which ran into his cell.  He complains that staff turned off the water when this occurred and took "all day" to clean it up.

Plaintiff makes the conclusory allegation that the facility got excessively hot in the summer, causing him to feel dizzy, disoriented, and exhausted.  Plaintiff does not indicate, however, the temperatures to which he was exposed or the length of time he was exposed to them.  He claims, further, that there was excessive noise which caused him to suffer sleep deprivation.  Plaintiff complains that, despite the overall filth, he was not given adequate cleaning supplies.

Plaintiff also complains of the food service, alleging that he was served cold meals on old rusty trays, and that staff serving the food did not always wear rubber gloves and hairnets.  The carts used to transport the food trays are allegedly used to transport "trash, prisoners' property, dirty mattresses, mail, laundry and cleaning supplies."  Plaintiff alleges that this has caused him to be sick, experiencing stomach pains, diarrhea, and cramps. He also expresses dissatisfaction with the prison laundry, claiming that the clothes he sent out came back dirty and he had to rewash them.  When he did so, he did not have hooks in his cell so he could hang the clothes to dry.

Plaintiff claims, generally, that these conditions caused him to develop a severe allergic reaction to the mold, asbestos, dirt, dust mites, roaches, mice, and bugs.  He does not state,

however, that he had been diagnosed with an allergic reaction or particularly identify the symptoms related to the severe allergic reaction. Plaintiff claims additional physical injury in the form of abdominal pain, bumps [location not identified] which exude pus and blood and knots in his throat; as well as back, neck and knee pain. In addition, he experiences the psychological fear of becoming ill or developing a disease. This fear has caused headaches, stomach aches, loss of appetite and loss of sleep.

Plaintiff alleges that Warden Melvin was aware of these conditions through the John Howard Association Monitoring Report which covered the period 2013 through 2015. Plaintiff asserts, without identifying the basis for this belief, that Defendant Melvin personally received copies of the Pontiac Sanitation Reports from 2016 to 2017. Plaintiff also sent a letter to Defendant Melvin on July 28, 2016, complaining of these conditions. As to the other Defendants, Plaintiff indicates that Defendants Prentice, Evans, Corley, Dalton, Meister, and Shoemaker worked on the North Cell House during the time in question and were aware of the conditions. In addition, he informed them of his complaints verbally and in written grievances. Plaintiff asserts that Defendants were all aware of the conditions and aware of the physical and psychological symptoms he suffered.

Lastly, Plaintiff asserts a state law claim of Intentional Infliction of Emotional Distress ("IIED") against all Defendants. "Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in 'extreme and outrageous conduct' that resulted in severe emotional distress." *Dent v. Nally*, No. 16-00442, 2016 WL 2865998, at *4 (S.D. Ill. May 17, 2016) (internal citations omitted). "[E]motional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe...unendurable by a reasonable person…" *Sornberger v. City of Knoxville,*

*Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id*. at 1030.

Plaintiff also names five Doe Defendants in his prayer for relief. Plaintiff did not, however, plead any facts regarding Doe individuals in the body of his complaint. It is clear that merely naming a defendant, without any allegations against him is insufficient to state a claim. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir.1998). As this is Plaintiff's third attempt and has not pled any misconduct on the part of the Doe Defendants, they will be dismissed. As Plaintiff fails to replead claims against Defendants Tilden, Foley, and Wexford, they are dismissed as well.

To successfully allege deliberate indifference, Plaintiff must establish both an objective and a subjective component. In a claim related to inhumane conditions of confinement, a plaintiff must establish the objective component by pleadings that the deprivations were 'objectively, sufficiently serious…' that 'the prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities.'" *Staggs v. Hollenbeck*, 248 F.3d 1159 (7th Cir. 2000). To establish the subjective component, a plaintiff must show that a defendant was deliberately indifferent, "that the official knew about the risk of harm, had the ability to prevent the harm, and failed to do so." *Williams v. Schmidt*, No. 14-487, 2019 WL 1046167, at *1 (W.D. Wis. Mar. 5, 2019) citing *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

The complained-of conditions must be objectively serious as routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society…" *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). To violate constitutional protections conditions must pose a

substantial risk to inmate health or safety. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). The deprivations "must be 'unquestioned and serious' and contrary to 'the minimal civilized measure of life's necessities.' Mere discomfort and inconvenience do not implicate the Constitution"; and "it is well-settled that conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment." *Jihad v. Wright*, 124 F.3d 204 at *2 (7th Cir. 1997) (internal citations omitted).

Here, the Court finds that several of Plaintiff's claims do not rise to the level of a constitutional violation. The allegations of overcrowding, garbage on the gallery, the rusted-out faucet with mold around it, the torn and dirty mattress, the lack of a pillow, the food service, the prison laundry, and the excessive summertime heat fail to identify a substantial risk to Plaintiff's health or safety. *See Simpson*, 863 F.3d at 745. As a result, these claims are DISMISSED.

Claims of poor ventilation, too, generally do not state a constitutional claim. "Conditions such as poor ventilation do not fall below 'the minimal civilized measure of life's necessities,' absent medical or scientific proof that such conditions exposed a prisoner to diseases or respiratory problems which he would not otherwise have suffered." *Thomas v. Cox*, No. 10-997, 2011 WL 3205660, at *4 (S.D. Ill. July 27, 2011), citing *Dixon v. Godinez,* 114 F.3d 640, 645 (7th Cir.1997). Here, Plaintiff pleads in a conclusory fashion that there was dander, vermin, hair, lead, and wool fibers in the ventilation system which caused sneezing, a runny nose and coughing. He claims also, however, to have suffered these symptoms as a result of a severe allergic reaction brought on by the exposure to pests and vermin. Here, Plaintiff fails to plead that he suffered any particular harm attributable to the ventilation system. This claim is DISMISSED.

Plaintiff also claims that Defendants had failed to prevent prisoners flooding the gallery, with the result that sewage seeped into his cell. As this allegation involves a potential threat to Plaintiff's health or safety, it successfully states an objectively unconstitutional condition of confinement. *See Williams v. Baldwin*, No. 18-986, 2018 WL 1942191, at *6 (S.D. Ill. Apr. 25, 2018) ("[e]xposure to human waste has been associated with colorable conditions of confinement claims.") The next part of the inquiry is whether Plaintiff has adequately pled the subjective element, that Defendants were deliberately indifferent to his health or safety in relation to the flooding. The subjective component of unconstitutional "punishment" is the *intent* with which the acts or practices constituting the alleged punishment are inflicted. The minimum intent required is "*actual* knowledge of *impending* harm *easily* preventable." *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (emphasis in original).

Here, Plaintiff fails to plead the subjective component, that Defendants were aware, and subjectively indifferent to a risk of harm. The Court recognizes that inmates have been known to purposefully obstruct toilets, flooding the gallery as a form of protest. While this is known to happen, the purposeful flooding of the gallery at the times not particularly identified by Plaintiff, appear to have been sudden, random events. Plaintiff does not plead that Defendants had warning and were "aware of facts" which would have led to the inference that Plaintiff's health or safety was at risk. *See Id*. at 22. "If the harm is remote rather than immediate, or the officials don't know about it or can't do anything about it, the subjective component is not established and the suit fails." *See also, Williams,* 2019 WL 1046167, at *1 (defendant must have had the ability but failed to prevent the harm.)

Plaintiff fails to allege that Defendants could have prevented the inmates' flooding of the gallery. *See Jackson* at 22; *McGill v. Duckworth*, 944 F.2d 344, 348–49 (7th Cir. 1991) (prison

7

employees not liable for circumstances beyond their control). While Plaintiff alleges that inmates were not punished for such behavior, he does not assert that punishment would have prevented the occurrences. Plaintiff has also pled that Defendants regularly cleaned up the flooding, thus taking the only avenue open to them in which to prevent the harm to Plaintiff. To find otherwise would render the officers potentially liable for any sudden unanticipated misconduct by the prisoners in their charge. The claim as to the flooding of the gallery is DISMISSED. Plaintiff's complaint that the water was turned off when the gallery flooded is also DISMISSED. The Court finds that it is eminently reasonable to temporarily discontinue the water supply in response to a flood.

Plaintiff also complains that he has been struck by thrown feces. Here again, he fails to plead a subjective component, that Defendants had knowledge of a threat to Plaintiff's health and safety and, despite having the opportunity, failed to prevent it. Plaintiff claims, in fact, that officers too, are doused with urine and feces. He pleads nothing to support that the Defendants, who could not prevent the harm to themselves, could have prevented the harm to him. This claim is DISMISSED.

Plaintiff also claims that other inmates banged on the cell doors, creating excessive noise which rendered him unable to sleep. Plaintiff, however, provided little detail, not indicating how often this happened or the times of day at which this most often occurred. By all accounts, prisons are noisy places and the Court suspects that the segregation unit would naturally be a noisier place than the general population, as inmates housed there would likely act with less decorum, resulting in a noisier and more disorderly environment. Defendants have potential liability for deliberate indifference only if their behavior was "something approaching a total unconcern for [plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to

8

prevent harm." *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (a few hours of periodic loud noise did not pose a serious risk of injury). *See Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (finding that excessive noise violated the constitutional claim where the noise "occurred every night, often all night, interrupting or preventing [plaintiff's] sleep). Without any factual showing that the noise level of the segregation unit was atypical and was allegedly caused by the action or inaction of the Defendants, Plaintiff fails to plead sufficient facts in support of this claim and it is DISMISSED.

Plaintiff asserts that the drinking water is contaminated with radium and lead. While he does not explain the basis for this belief, to the extent he claims that the drinking water available to him was substandard to that available to the "general population," he states a colorable claim at the pleadings stage. *White v. Monohan*, 326 Fed. Appx. 385, 387 (7th Cir. 2009). Plaintiff is placed on notice, however, that it will be his burden to establish that the water does, indeed, violate applicable standards. *Id.* citing *Carroll v. DeTella,* 255 F.3d 470 (7th Cir. 2001) (no constitutional violation where drinking water did not violate EPA standards).

Plaintiff also states a colorable claim as to the feces in the food slot as well as to the bugs, vermin, and mice in his cell. He may also proceed on the claim that he was not given adequate cleaning supplies with which to remedy the situation. *See Williams*, 2019 WL 1046167, at *3 citing *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (placing prisoner in a filthy cell without the means to clean it, stated an Eighth Amendment violation).

Plaintiff fails to state a claim for IIED, however, as he fails to plead that any Defendant intentionally or recklessly engaged in 'extreme and outrageous conduct.' *Dent*, 2016 WL 2865998, at *4. Furthermore, Plaintiff has pled emotional distress in the form of fear, disgust

and worry, not the severe emotional distress required for an IIED claim. *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030. This claim is DISMISSED.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed against Defendants Melvin, Prentice, Evans, Corley, Dalton, Meister, and Shoemaker on the conditions of confinement claim related to the contaminated food slot, bugs, vermin and mice in Plaintiff's cell, and the lack of adequate cleaning supplies. Lt. Evans, Lt. Corley, Lt. Dalton, Sgt. Meister, and Sgt. Shoemaker are to be added to the caption. All other claims are DISMISSED. Any claims not identified will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. The five Doe Defendants and Defendants Tilden, Foley and Wexford are all DISMISSED.

2. The Clerk is directed to send Defendants, pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

3. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

4. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

5. Plaintiff shall serve upon Defendants, if served, but not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

6. Once counsel has appeared for Defendants, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

8. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

10/2/2019  
ENTERED

s/ Joe Billy McDade  
JOE BILLY McDADE  
UNITED STATES DISTRICT JUDGE